*W. A. Slaton, F. W. Gilbert,* contra, cited: 7 *Ga. App.* 354, 519; 67 *Ga.* 672.

---

## 3280. VOLUNTEER STATE LIFE INSURANCE CO. v. BUCHANNAN.

1. In this State the rule is well settled that a person has a right to procure an insurance policy on his own life, and to assign it to one who has no insurable interest in his life, provided it be not done by way of cover for a wager policy; and the intention of the insured in taking out the policy and in making the assignment, and of the assignee in accepting the assignment, are questions of fact, for determination by a jury.

2. There is some evidence in the present case tending to show that the policy contract was valid, and that the assignment thereof was made in good faith, for a valuable consideration.

3. *Query:* Where the evidence shows that an assignment or sale by the insured, of a policy of insurance, to one who had no insurable interest in his life was made with the knowledge of the insurance company, and the company subsequently received the premiums directly from the assignee for three years, and the policy provided that after two years it would be incontestible on any ground, would not the company be estopped from contesting the validity of the policy? And even if not estopped, could the company make any contest of the validity without first tendering back the premiums which it had received from the. assignee of the policy?

4. Where the assignee of a policy of insurance, which provides that the assignment is "subject to proof of interest of the assignee," makes timely proof of loss, in which he states that he holds the policy as an absolute purchaser for value, and not as collateral security, and subsequently, in reply to letters from the insurance company, asking for proof of interest, writes to the company that his interest is that of an absolute purchaser for value, and repeats the same statement to a special agent of the company, sent to him by the company for the purpose of finding out the interest of the assignee and making a settlement with him of the policy, this is a substantial compliance with the provision of the assignment requiring proof of interest by the assignee.

5. There was no error in excluding the testimony of the agent of the insurance company through whom the application for the policy was made, to the effect that he disapproved the policy because in his opinion it was a wager policy; and in also rejecting the testimony that in the town where the insured lived, there was a great deal of speculation in policies of insurance.

6. The exceptions made to portions of the charge of the court are without

merit; and the written requests to charge were substantially covered by the general instructions.

7. No error of law appears, and the verdict is supported by some evidence.

DECIDED JANUARY 15, 1912.

Action on insurance policy; from city court of Americus—Judge Crisp. February 7, 1911.

*Smith & Carswell, R. L. Maynard,* for plaintiff in error, cited: 87 *Ga.* 681; 130 *Ga.* 209; 6 Enc. Ev. 23; 117 U. S. 591 (20 L. ed. 1000) ; Cooley's Briefs on Ins. 258, 261, 273-4; Civil Code (1910), § 2479; 125 *Ga.* 216-217; 104 *Ga.* 269-70; 25 Cyc. 736; 138 Mass. 24; 122 Ky. 402, 12 A. & E. Annot. Cases, 685, 121 Am. St. R. 467; 70 Am. St. R. 424; 121 N. Y. 399 ; 9 Fed. 249 ; 57 Am. D. 103; 94 U. S. 457, 460; 3 *Ga. App.* 686; 102 Am. St. R. 552; 70 Am. St. R. 429, 650; 122 *Ga.* 49.

*E. A. Hawkins,* contra, cited: Civil Code, § 2498; 125 *Ga.* 206 (6 L. R. A. (N. S.) 128, and notes) ; 109 *Ga.* 1, 3, 5; 112 *Ga.* 545; 131 *Ga.* 568, 570; 132 *Ga.* 495; 3 L. R. A. (N. S.) 934, and notes; 25 Cyc. 709, 764, 868; 4 *Ga. App.* 342; 6 *Ga. App.* 721; 104 *Ga.* 256, 271-2; 124 *Ga.* 513; 59 *Ga.* 813 (3) ; 62 *Ga.* 251; 57 *Ga.* 469; 101 *Ga.* 594 (1), 596; 116 *Ga.* 502, 805; 130 *Ga.* 835.

HILL, C. J. This was a suit on an insurance policy, to recover its face value ($5,000), besides interest, attorney's fees, and damages, as provided for in §§ 2549 and 4392 of the Civil Code of 1910. The policy was on the life of Davis P. Holt, and by its terms was payable to his estate or assigns. It was dated April 26, 1906, and was duly transferred and assigned to the plaintiff, for a valuable consideration, on May 8, 1906. The insured died in November, 1909, and proofs of death, as required by the contract, were made by the assignee of the policy and presented to the insurance company, and demand was made upon it by the assignee for payment of the amount of the policy. The evidence showed also that the insurance company had received directly from the assignee the premiums due on the policy from the time for which it was in force until the death of the insured, and that when the assignment was made, the company had due notice and consented to it. The foregoing facts are not controverted. The jury returned a verdict for the plaintiff, for the amount of the policy, refusing to find in favor of the claim for attorney's fees and damages. The defendant's motion for a new trial was overruled.

Two defenses were relied upon. First, it was contended by the

insurance company that the assignee had not complied with the terms of the assignment, it being provided therein that the assignment was "subject to proof of interest of the assignee." The assignment does not provide how this proof of interest shall be made. The evidence shows, as to this matter, that in the proof of loss the plaintiff claimed that he was entitled to the amount of the policy as "the absolute owner," by virtue of the assignment. A few days thereafter, in replying to letters from the insurance company, asking for information as to his interest, he wrote that he was the absolute owner of the policy, having bought it outright for a valuable consideration; and subsequently, when the special agent of the company was sent to him for the purpose of obtaining more definite information on this subject, and for the further purpose of adjusting the loss, the plaintiff repeated what he had already written to the company,—that he was in fact the absolute owner of the policy, for a valuable consideration; that he had bought it outright, and that he did not hold it as collateral security for any indebtedness which the insured owed him. We think this evidence shows that there was a compliance with this provision of the policy. We do not see how there could have been a more definite and specific compliance than was made both in the letters written to the company on the subject, and in the information directly given to the special agent.

The second and principal defense relied upon was the contention that the contract of insurance was invalid because it was a wagering contract; that the insured and the plaintiff had entered into an agreement that the insured should apply for the policy, and that, after obtaining it, he would transfer it to the plaintiff, in consideration of an advancement of $300 or $400 made to him by the plaintiff; that the insured was not able to pay the first premium, and, in compliance with this mutual agreement, made the application through the agent of the company; that when the policy was delivered to the insured, he went to the assignee for the money to pay the first premium, and the money was advanced to him by the plaintiff for the purpose of paying the premium, and that three or four days thereafter the assignment was made, in consideration of this advance and in performance of the previous agreement between the two in reference thereto; that the plaintiff knew that the insured, at the time he made the application for insurance, was

17

a habitual drunkard, and knew that he was in a delicate state of health, and would probably die prematurely from the excessive use of liquor, and on this account the plaintiff was willing to hazard the premiums on the policy of insurance, with the hope and belief that he (the plaintiff), as the assignee, would in a short time receive the full amount of the policy; in short, that the policy was taken out and the assignment made for the purpose of evading the law in reference to gambling contracts, and the means adopted were simply a cover for a wager policy. As to this defense it may be stated that there were some strong circumstances tending to show that it was the truth of the transaction, except as to the charge that the insured was a habitual drunkard. This fact was not proved, but it was shown by circumstances that he was unable to pay the first premium, and that he did make application to the plaintiff for the money out of which the first premium was paid; but the plaintiff swears positively that Holt came to him with the policy and offered to sell it to him for $300, and, after some negotiations, he did buy it outright from Holt, and held it under a written assignment, which was subsequently approved by the company; and that he gave the $300 to Holt and took the assignment in ignorance of the fact that the premium had not been paid. There is other testimony which bears more or less on this defense, but the question was one exclusively for consideration by the jury. The learned trial judge clearly and fully charged the law as laid down by the Supreme Court in the case of *Rylander* v. *Allen*, 125 *Ga.* 206 (53 S. E. 1032, 6 L. R. A. (N. S.) 128), that "one has the right to procure insurance on his own life and assign the policy to another, who has no insurable interest in the life insured, provided it be not done by way of cover for a wager policy." The law which controls this question of wager contracts of insurance is so fully and clearly set out in the learned and elaborate opinion of Mr. Chief Justice Fish, in the decision which is cited, that it will be unnecessary to add any other authority or to discuss the question any further. The law, therefore, having been correctly charged by the court, and the question of the intent with which the policy was taken out and assigned being a matter for the jury exclusively, this court can not interfere, unless there was in the trial of the case some material and prejudicial error against the defendant. We

have examined the special assignments of error very carefully and will dispose of them briefly.

In support of the contention that the contract in question was a wager contract, testimony was offered that the local agent of the company, through whom the application for the insurance was made, had expressed himself as being opposed to writing this kind of insurance (meaning speculative), and that in the years 1905 and 1906 there was a good deal of speculative insurance written in Americus, the home of the applicant in this case. We think the testimony was inadmissible and immaterial for the purpose of showing that the contract in question was a wager contract; and the citations relied upon in support of the admissibility of the evidence are not in point. The authorities cited are to the effect that other transactions than the one under investigation may in some cases be admitted for the purpose of illustrating intention. Mutual Life Insurance Co. v. Armstrong, 117 U. S. 591 (20 L. ed. 1000) ; Small v. Williams, 87 Ga. 681; 6 Enc. Ev. 23.

Several written requests to charge were duly made by the defendant. The instructions requested were pertinent to the defense, if the contract in question was a wager contract, and was therefore void. We have examined these requests in connection with the general instructions, and we find that they are fully, indeed most favorably to the insurance company, covered by the general instructions on that subject, and it would have been superfluous reiteration for the court to have given them in charge.

It is also contended that the court erred in charging the jury that, under the terms of the contract of insurance, "it would be incontestible after the expiration of two years, except that the insured participate in the military service—the army or navy." It is said that this instruction was not applicable to the facts of the case and was prejudicial to the defendant. This was the provision of the contract, and the court gave it in connection with the instruction that unless the jury found that the contract was a valid contract, it would not be applicable, because if it was a wager contract it was void ab initio. The instruction objected to, therefore, was beneficial to the defendant; for otherwise the jury might have inferred that after two years (and it was undisputed that the contract had been in force for more than two years), it was incontestible, even if they found it was a wager contract. Besides, one

of the defenses relied upon, as to which some evidence was introduced, but which, as before stated, was not satisfactorily proved, was that the insured, at the time he took out the policy, was a habitual drunkard, and it was contended that if this was true, he falsely represented the condition of his habits to the company, and for this reason the policy was void. The charge, therefore, as to its being incontestible after two years, was referable to this defense.

The foregoing is a brief discussion of the essential questions raised by the record. After a careful examination of the evidence and of the charge of the court, and also the law applicable, we have come to the conclusion that the court committed no error in the trial, and that while there were some strong circumstances tending to establish the defense that the contract was a wager contract, yet there was positive evidence to the contrary on the part of the plaintiff; and as this was a matter exclusively for decision by the jury, the judgment refusing a new trial must be          *Affirmed.*